# In the United States Court of Federal Claims

No. 23-545
(Filed Under Seal: May 12, 2023)
Reissued: July 21, 2023

|  |  |
|---|---|
| PREDICTIVEIQ LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

*Kevin Barnett*, PilieroMazza, Washington, DC, for plaintiff.

*Elizabeth Marie Pullin*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

**ORDER**

**SMITH, Senior Judge**

      Before the Court is plaintiff's Motion for Preliminary Injunction. For the reasons discussed below, the Court denies plaintiff's Motion.

**I.    Background**

      This case involves a post-award bid protest of awards made under the United States Department of the Air Force's ("Air Force" or "Agency") Commercial Solutions Opening ("CSO") Direct-To-Phase-II X23.4 seeking commercial technologies "to create new Air Force solutions or potential new capabilities to help fulfill Agency requirements, close capability gaps, or provide potential technological advancements." Complaint at 5, ECF No. 1 [hereinafter Compl.]. The CSO contemplated award of up to 104 Small Business Innovation Research ("SBIR") Program contracts under two topics: Topic AFX234-DCSO1 – Orbital Prime ISAM: In-Space Servicing Assembly and Manufacturing Direct-To-Phase II SBIR ("Orbital Prime ISAM Topic") and Topic AFX234-DCSO2 – Direct-to-Phase-II Call for Innovative Defense-Related Dual-Purpose Technologies/Solutions with a Clear Air Force Stakeholder Need ("Open Topic"). *Id.* Unlike more traditional government contracts, a SBIR solicitation "is not based on design or performance specifications for existing equipment, but rather emphasizes

scientific and technological innovation and has as its objective the development of new technology." *Squire Sols., Inc.*, B-419477.2, 2021 CPD ¶ 229 at 5 (Comp. Gen. June 10, 2021).

On January 20, 2023, the Agency informed plaintiff that it was not an awardee under the Orbital Prime ISAM Topic. Compl. at 6. Plaintiff filed a protest with GAO challenging the initial evaluation and award. *Id.* Afterwards, the Agency took corrective action and ultimately made a new award decision, again excluding plaintiff as an awardee. *Id.* On April 3, 2023, plaintiff filed a second GAO protest. *Id.* Shortly thereafter, the Agency notified plaintiff that it was staying the awarded contracts. *Id.* at 7. On April 12, 2023, the Agency stated that "while the Air Force initially stayed all awards made under CSO AFX234-DCSO1, the Air Force is now lifting the stay on certain awards that would not affect, or would not be affected by, a scenario in which [plaintiff's] proposal would be awarded." *Id*. The Agency stated that it lifted the Competition in Contracting Act ("CICA") stay on certain awards because CICA did not apply, thus, negating the need for an override. *Id.* However, the Agency kept in place a voluntary stay of performance on the 29th and 30th ranked Orbital Prime ISAM Topic funding agreements. *See* Defendant's Motion to Dismiss and Response to Plaintiff's Motion for Preliminary Injunction, ECF No. 20 at 14 [hereinafter Def.'s Resp.].

On April 20, 2023, plaintiff filed its Complaint and a motion for preliminary injunction. *See generally* Compl.; Plaintiff's Motion for Preliminary Injunction, ECF. No 2 [hereinafter Pl.'s Mot. for PI]. On May 6, 2023, defendant filed a response to plaintiff's Motion for Preliminary Injunction. *See generally* Def.'s Resp. On May 9, 2023, the Court held Oral Argument. The parties have fully briefed plaintiff's Motion for Preliminary Injunction, and it is ripe for review.

## II. Discussion

Preliminary injunctions are "extraordinary and drastic remed[ies] . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal citation omitted). "When determining whether to grant a preliminary injunction, the Court considers: (1) whether the movant has a reasonable likelihood of success on the merits, (2) whether the movant will suffer irreparable harm if an injunction is not granted, (3) whether the balance of hardships tips in the movant's favor, and (4) whether the public interest is best served by an injunction." *LS3, Inc. v. United States*, 163 Fed. Cl. 1, 8 (2022) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "No single factor is determinative, and the weakness of the showing regarding one factor may be overborne by the strength of the others." *Munilla Constr. Mgmt., LLC v. United States*, 130 Fed. Cl. 131, 135 (2016) (internal citations omitted). However, at the same time, "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned [to] the other factors, to justify . . . denial." *Id*. (internal quotation marks omitted) (quoting *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953 (Fed. Cir. 1990)). For the reasons stated below, the Court finds preliminary injunctive relief inappropriate in this case.

First, the Court finds that plaintiff has not demonstrated that it is likely to succeed on the merits. Plaintiff alleges that the Air Force violated the statutory requirements of CICA because (1) CICA applies to the CSO and (2) the Air Force is not complying with CICA's automatic stay requirements under 31 U.S.C. § 3553. *See* Plaintiff's Memorandum in Support of Motion for

Preliminary Injunction at 7–8, ECF. No. 3 [hereinafter Pl.'s Memo. in Support of PI]; *see also* Compl. at 1–2.  In response, defendant argues that this was not a traditional solicitation and the CICA stay provision is not applicable to these awards because they were made under separate procurements from the one that PredictiveIQ currently protests before the GAO.  *See* Def.'s Resp. at 27.

Under the Administrative Procedure Act standard of review, agency procurement actions—including an agency's decision whether to implement a CICA stay—may be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A).  The arbitrary and capricious standard is a highly deferential one.  *See Advanced Data Concepts*, *Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  Thus, "[i]f the [C]ourt finds a reasonable basis for [an] agency's action, the [C]ourt should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).  Plaintiff bears a heavy burden to prevail in this protest.  *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001).

Relevant here, "[t]he SBIR program gives the participating agencies broad discretion in administering the program." *Squire Sols., Inc. v. United States*, 156 Fed. Cl. 249, 269 (2021).  "Under the SBIR program's broad discretion, agencies have unfettered ability to avoid the constraints of a bid protest." *Id.*  Accordingly, an agency has "control over how it construct[s] its solicitations." *Id.* at 263.  Within that framework, the purpose behind SBIR programs is to allow the Agency "flexibility in the operation of their individual programs." Small Business Administration SBIR/STRR Policy Directive (version 2), Oct. 1, 2020, at 2 (stating that the Small Business Administration is "attempt[ing] to reduce the paperwork and regulatory compliance burden on small business concerns [] applying to and participating in the SBIR/STTR programs.").  As such, this is a unique solicitation for research and development ("R&D") which differs from the usual government procurement.

In this case, the Agency requested proposals to meet needs in broad areas identified by the Agency.  Pl.'s Mot. for PI, Exhibit ("Ex.") B at 6 ("This CSO seeks innovative, commercial technologies proposed to create new [Air Force] solutions or potential new capabilities fulfilling requirements, closing capability gaps, or providing potential technological advancements."). Accordingly, each of these proposals were evaluated based on their individual merit and unique technical solutions to meet the Agency's defense and commercial needs.  *See id.* at 48.  These individual proposals stem from the SBIR program involving one CSO but comprise multiple awards responding to many separate needs contemporaneously.  Indeed, Federal Acquisition Regulation 3.104-1 defines federal agency procurement including "broad agency announcements and small business innovation research programs, *each proposal received by an agency constitutes a separate procurement*."[1]  48 C.F.R. § 3-104.1 (emphasis added).  Therefore, the

---

[1]  The Court is aware that a pending Defense Federal Acquisition Regulation Supplement rule proposes to include "commercial solutions openings" in the definition of "federal agency procurement."  *See Defense Federal*

Court is not convinced that the Agency acted in an arbitrary or capricious manner when it issued a stay to the particular awards which affected plaintiff's protest but not the remaining awards in the CSO program.

Next, the Court concludes that plaintiff has failed to demonstrate that it will suffer irreparable harm before the conclusion of its GAO protest. Plaintiff argues that it will be irreparably harmed due to (1) its inability to compete for an award; (2) its competitive disadvantage when most awards have been made; and (3) the Agency's strong incentive to disregard GAO's recommendations should these awards proceed. *See* Pl.'s Memo. in Support of PI at 11–15. Defendant responds that plaintiff has not met the high bar in demonstrating irreparable harm. *See* Def.'s Resp. at 28 (citing *Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d 327, 334 (D.D.C. 2012)). Defendant argues that plaintiff has not suffered harm in the form of lost opportunities when the Agency has preserved funding "in the event that the Air Force elects to reevaluate or award a different SBIR D2P2 funding agreement." Def.'s Resp. at 30. Additionally, defendant argues that plaintiff's alleged competitive disadvantage is speculative because plaintiff's R&D approach is different in comparison to other awardees. *See* Def.'s Resp. at 30–31.

On review, the Court finds that plaintiff has not demonstrated irreparable harm. Plaintiff must demonstrate more than the "mere possibility of injury" but a "presently existing, actual threat must be shown." *See Qingdao Taifa Grp. v. United States*, 581 F.3d 1375, 1379 (Fed. Cir. 2009) (quoting *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983)). In furtherance of the SBIR program, the Agency's CSO for R&D efforts contemplated awarding multiple awards. Pl.'s Mot. for PI, Ex. B; *see also* Def.'s Resp. at 8–9. With no set requirement, each offeror was evaluated to "determine the most promising technical and scientific approaches" to various "defense need[s]" identified in the CSO, with each proposal "judged on its own merits." Pl.'s Mot. for PI, Ex. B at 48–49. After the Agency determined the technical aspects of the offerors, the Agency ranked the proposals for purposes of funding availability. *See id.* Due to the unique nature of this procurement, the Agency put forth stop-work orders for funding agreements ranked 29 and 30—essentially preserving those funds should plaintiff prevail at the GAO. *See* Def.'s Resp. at 14, 29–30. Thus, plaintiff has not demonstrated an existing or actual threat to which an injunction would be appropriate.

Additionally, the Court finds allegations of competitive disadvantage too speculative to demonstrate irreparable harm. Plaintiff's argument of competitive disadvantage is supported by an affidavit from its CEO, Dr. Juan Betts, arguing that plaintiff's technological approach overlaps with at least fifteen of the thirty awarded contracts. *See* Pl.'s Mot. for PI, Ex. L at 2. Dr. Betts asserts that the Agency would be giving "other companies a head start, thereby disadvantaging [plaintiff]." *See id*. The Court is sympathetic to plaintiff's position that Machine Learning/Artificial Intelligence technologies are fast-paced and constantly evolving; however, this perceived harm is speculative under the standards of irreparable harm. *See Lockheed Martin*

---

*Acquisition Regulation Supplement: Defense Commercial Solutions Opening (DFARS Case 2022–D006)*, 88 Fed. Reg. 6,605, 6,606 (Jan. 31, 2023) (to be codified at 48 C.F.R. pt. 203).

*Corp. v. United States*, 124 Fed. Cl. 709 (2016) (holding that an awardee's transition into performance was not sufficient to establish irreparable harm); *see also IBM Corp. v. United States*, 118 Fed. Cl. 677 (2014).

Lastly, the Court finds that the balance of equities and public interest tips against an award of injunctive relief. The statutory use of the SBIR Program "is to strengthen the role of innovative [small business contracts] in federally-funded research or research and development." Small Business Administration SBIR/STRR Policy Directive (version 2), Oct. 1, 2020, at 2. To that end, the Agency issued the CSO to meet various defense needs under the Orbital Prime ISAM Topic with a view of strengthening small businesses and non-profit research institutions. *Id.* Further, plaintiff is requesting that all 147 CSO awards be enjoined, including those awards that are not under the Orbital Prime ISAM Topic. *See generally* Pl.'s Mot. for PI. To preserve the status quo, the Agency has agreed to reserve funding should plaintiff prevail at the GAO. The weighing of harm to the Agency and numerous other contractors weighs strongly in favor of staying our hand. *See FMS Inv. Corp. v. United States*, 142 Fed. Cl. 488, 490 (2019) (citing *Cont'l Serv. Grp., Inc. v. United States*, 722 Fed. App'x 986, 994 (Fed. Cir. 2018)) ("A court usually issues a preliminary injunction to preserve the status quo that existed before the litigation began until the court can make a final decision on the merits.").

Moreover, the public interest is undoubtedly furthered by allowing these contractors to perform to stimulate technological innovation, encourage small business relationships in R&D, foster partnerships between small businesses and non-profit research institutions, and increase commercial application of R&D solutions and technologies toward identified defense needs. *See* Pl.'s Mot. for PI, Ex. B at 6–7. Taken together, the Court concludes that plaintiff has not demonstrated that the balance of equities and public interest favors granting the extraordinary relief it seeks.

### III.   Conclusion

For the reasons set forth above, plaintiff's Motion for Preliminary Injunction is hereby **DENIED**.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*
Loren A. Smith,
Senior Judge